Filed 1/2/14  Sulphur Mountain Land & Livestock v. Redmond CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SULPHUR MOUNTAIN LAND & LIVESTOCK CO. LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOHN A. REDMOND et al., <br><br> Defendants and Appellants. | B238767 <br><br> (Los Angeles County <br> Super. Ct. No. BS134625) |

APPEAL from an order of the Superior Court of Los Angeles County.  Matthew St. George, Temporary Judge.  (Cal. Const., art. VI, § 21.)  Reversed and remanded.

Law Offices of Raymond H. Aver and Raymond H. Aver for Defendants and Appellants.

Westlake Law Group and David Blake Chatfield for Plaintiff and Respondent.

_____

Plaintiff Sulphur Mountain Land & Livestock Co. LLC sued defendants John and Maureen Redmond in Ventura County Superior Court, and obtained a sizable judgment against them. When plaintiff attempted to enforce its judgment, defendants sought bankruptcy protection. During the bankruptcy, defendants claimed the California homestead exemption to protect a portion of the equity in their Los Angeles home from the bankruptcy estate, and therefore, to make fewer funds available to pay plaintiff's judgment. Defendants' debts were not discharged by the bankruptcy court, and ultimately, plaintiff sought to execute its judgment on defendants' home by filing this action for the sale of their home, contending defendants could not again avail themselves of the homestead exemption. The trial court agreed, finding "there is no homeowners exemption because it was used by the judgment debtor" in bankruptcy. The trial court also concluded that plaintiff's lien attached in 2002, giving it priority over all but the mortgage lien.

Defendants appeal the order approving the sale of their home, contending the sale order deprived them of their homestead exemption. We agree, finding no merit to plaintiff's contention that the homestead exemption evaporates after it has been claimed in bankruptcy. Plaintiff's novel theory that the homestead exemption may be claimed only once has no support in the homestead law. The California homestead exemption protects defendants' equity up to the amount of the exemption even if the home is sold. The homestead exemption is not like a retail discount coupon that can only be used once. We also find that plaintiff's lien was effective as of October 2002. We reverse the sale order and remand the case for further proceedings consistent with this opinion.

**BACKGROUND**

On October 4, 2002, plaintiff sued defendants and their daughter in Ventura County Superior Court for breach of a commercial lease. The court issued a writ of attachment against defendants' property on October 11, 2002, which was recorded against their Los Angeles County home on October 15, 2002. A notice of lien was recorded with the California Secretary of State on October 25, 2002. In 2003, defendants obtained an order quashing the writ of attachment, but plaintiff posted an undertaking to

2

keep the attachment in place pending appeal or entry of judgment. Plaintiff's appeal of the attachment order was dismissed by this court in 2012 (case No. B168314).[1]

Meanwhile, the Ventura action proceeded, and in June 2005, defendants accepted plaintiff's Code of Civil Procedure section 998 offer to compromise. The parties settled and judgment was entered for $25,000, leaving open the issue of costs and fees. Plaintiff then moved for recovery of attorney fees, and an amended judgment for $456,853.14 was entered in February 2006 (the Ventura judgment). In March 2006, the Ventura court issued an abstract of judgment and writ of attachment. Notice of the judgment lien was filed with the Secretary of State. Defendants appealed the Ventura judgment, but their appeal was dismissed in 2011 for failure to file an opening brief (case No. B189989).[2]

In May 2006, plaintiff executed on defendants' bank account. Defendants filed a bankruptcy petition later that month. In March 2008, on the bankruptcy trustee's motion, the bankruptcy court ordered a sale of the bankruptcy estate's interest in defendants' home (the equity), excluding their claimed $150,000 homeowners exemption. Defendants obtained a loan from Lori Haynes to buy $210,600 of the equity in their home. The Haynes loan was secured by a deed of trust recorded on the property on August 6, 2008. The loan proceeds were used to pay defendants' creditors, including plaintiff. Plaintiff received $181,478.15 from the loan proceeds in October 2009.

Plaintiff filed an adversary complaint objecting to defendants' discharge in the bankruptcy proceeding, for failure to comply with their discovery obligations during the bankruptcy. In April 2010, the bankruptcy court found the Ventura judgment against

---

[1]     The dismissal is not part of the record on appeal. Nevertheless, we take judicial notice, on our own motion, of the order of dismissal, and of the other appeals by these parties. (Evid. Code, §§ 452, subd. (d), 459.) The first appeal was filed on June 25, 2003, but was stayed by defendants' bankruptcy on September 15, 2003. The stay was lifted on August 24, 2012. On September 19, 2012, the appeal was dismissed as abandoned, having been mooted by entry of judgment.

[2]     That appeal was originally filed in March 2006, but was also stayed because of defendants' bankruptcy. It was dismissed in April 2011, after the bankruptcy stay was lifted and defendants failed to file an opening brief.

3

defendants was a secured debt and entered judgment for plaintiff on the adversary complaint, denying discharge of the judgment debt under Bankruptcy Code, title 11 United States Code sections 727(a)(2)(B), 727(a)(3), and 727(a)(4)(A). Defendants appealed, but the judgment was affirmed by the district court and the Ninth Circuit Court of Appeals.

In September 2011, the Ventura judgment was amended to $543,804.35, to add postjudgment costs and interest, and to account for credits received during the bankruptcy. A new abstract of judgment was recorded on October 3, 2011.

Therefore, as of October 2011, there were several liens on defendants' home. These included Citi Mortgage's December 2001 purchase money first deed of trust, plaintiff's judgment lien (perfected by abstracts of judgment recorded in October 2002 and October 2011), Lori Haynes's August 2008 deed of trust, and a March 2010 deed of trust recorded by defendants' attorney to secure payment of $50,000 in attorney fees.

On October 31, 2011, plaintiff sought an order to sell defendants' home under Code of Civil Procedure sections 704.750 and 704.760. The application and accompanying memorandum of points and authorities posited that defendants used their homestead exemption in the bankruptcy proceeding, and "are not entitled to utilize the exemption twice." Plaintiff also contended its judgment lien was junior only to Citi Mortgage's lien, and was senior to the remaining liens on the property. Therefore, based on a recent appraisal, plaintiff estimated there was $397,735.93 in equity available to satisfy its Ventura judgment.

Defendants opposed the application, contending plaintiff's 2002 lien was extinguished by the bankruptcy court order that the sale of equity from the bankruptcy estate to defendants "shall be free and clear of any and all liens and other interests of [plaintiff], and such liens and interests, if any, shall attach to the sale proceeds with the same validity and priority as they may have had against the Property." Defendants argued that plaintiff's lien did not attach until 2011, after their bankruptcy discharge was denied and a new abstract of judgment was recorded, and was therefore junior in priority to all other liens on the property. Defendants also contended they were entitled to a

4

homestead exemption.

The trial court concluded that "there is no homeowners exemption because it was used by the judgment debtor and their decision was to use their homeowners exemption in the bankruptcy proceedings for the entire amount they were allowed at the time. So there is no exemption to be employed here." The trial court also concluded that plaintiff's lien was effective as of October 15, 2002, and accordingly, was only junior to Citi Mortgage's lien. On January 18, 2012, the trial court issued an order for the sale of defendants' home.

Defendants filed a timely notice of appeal.

## DISCUSSION

We find the bankruptcy proceedings did not extinguish defendants' homestead exemption nor eliminate plaintiff's 2002 lien.

### 1. Homestead Exemption

Resolution of this appeal turns on the interpretation of the homestead exemption statute, Code of Civil Procedure section 704.710 et seq. Statutory interpretation is a question of law, subject to de novo review on appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) Similarly, when the facts are not disputed, the effect or legal significance of those facts is a question of law. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) We must construe the language of a statute " 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

5

The homestead right is recognized by the California Constitution, which provides that "[t]he Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families." (Cal. Const., art. XX, § 1.5.) "The object of all homestead legislation is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors." (*In re Estate of Fath* (1901) 132 Cal. 609, 613.) "[T]he homestead law is not designed to protect creditors, but protects the home against creditors . . . thereby preserving the home for the family." (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 588.) Because homestead statutes are remedial, they are "given a liberal construction in favor of the exemptions created." (*Thorsby v. Babcock* (1950) 36 Cal.2d 202, 204.)

The limitations and requirements for the homestead exemption are set forth by statute. (Cal. Const., art. XX, § 1.5; see also *Noble v. Hook* (1864) 24 Cal. 638, 639-640.) A homestead is "the principal dwelling . . . in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and . . . in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." (Code Civ. Proc., § 704.710, subd. (c).) "A homestead exemption does not preclude sale of the home but entitles the homesteader to receive the value of the exemption if the property is sold to satisfy a judgment lien." (*Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 68; see also Code Civ. Proc., § 704.730.)

A homeowner or spouse of an owner may declare and record a homestead exemption. (Code Civ. Proc., § 704.920 ["A dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead . . . by recording a homestead declaration in the office of the county recorder of the county where the dwelling is located. From and after the time of recording, the dwelling is a declared homestead for the purposes of this article."].) California law also provides an automatic homestead

6

exemption. The Legislature created an automatic homestead exemption to protect debtors who do not file homestead declarations. (§ 704.720.) The automatic exemption does not have to be memorialized in a recorded declaration. Rather, "[t]he automatic homestead exemption is available when a party has continuously resided in a dwelling from the time that a creditors' lien attaches until a court's determination in the forced sale process that the exemption does not apply." (*In re Mulch* (Bankr. N.D.Cal. 1995) 182 B.R. 569, 572, citing *Webb v. Trippet* (1991) 235 Cal.App.3d 647, 651; see also § 704.720.)

A declared homestead provides a debtor with greater protection than the automatic homestead exemption. For example, a declared homestead is protected from a *voluntary* sale, whereas the automatic homestead only entitles the debtor to protection from a *forced* sale. (Code Civ. Proc., §§ 704.960 ["If a declared homestead is voluntarily sold, the proceeds of sale are exempt"]; 704.720; see also Legis. Com. com., 17 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 704.720, p. 141 ["As under former law, proceeds of a voluntary sale of [an automatic] homestead are not exempt under the proceeds exemption"].) The proceeds from a voluntary sale of a declared homestead may be reinvested within six months, thus allowing the debtor to invest in another residence, which will also be afforded homestead protection to the same extent as the initial homestead. (§ 704.960.) The proceeds of a forced sale of an automatic homestead are afforded the same protection, and may be reinvested in a new homestead. (§ 704.710, subd. (c).)

A judgment lien does not attach to a declared homestead; rather, the lien only attaches to the equity in the property that exceeds the declared homestead exemption and any preexisting liens on the property. (Code Civ. Proc., § 704.950, subds. (a), (c); *Smith v. James A. Merrill, Inc.* (1998) 64 Cal.App.4th 94, 99.) When no declaration of homestead has been recorded, the lien attaches to the property, irrespective of the amount of equity in the home. However, the judgment creditor is required to obtain a court order for sale of the homestead under section 704.800, and the court must determine the amount of the homestead exemption and the fair market value of the property. The homestead may not be sold unless a bid is received that exceeds the amount of the homestead exemption plus "any additional amount necessary to satisfy all liens and encumbrances on the property." (§ 704.800,

7

subd. (a); see also *Rourke v. Troy* (1993) 17 Cal.App.4th 880, 885-886 [all liens senior to the executing creditor's lien, and the homestead exemption, must be satisfied or the home may not be sold].)

Here, the trial court concluded that defendants had no homestead exemption because defendants had claimed the homestead exemption in their earlier bankruptcy proceeding. Nothing in the homestead law provides that the exemption expires after it was once claimed in bankruptcy. Instead, the Legislature clearly intended the exemption to apply so long as a dwelling qualifies as a homestead. For example, as mentioned above, homestead protection generally survives the sale of a homestead. In both declared and automatic homesteads, the proceeds of the sale of the homestead are also exempt, in the amount of the homestead exemption, and may be reinvested within six months in a new property, which will be afforded homestead protection to the same extent as the original property. (Code Civ. Proc., §§ 704.960, 704.710, subd. (c) ["Where exempt proceeds from the sale . . . of a homestead are used toward the acquisition of a dwelling . . . 'homestead' also means the dwelling so acquired if it is the principal dwelling in which the judgment debtor . . . resided continuously from the date of acquisition until the date of the court determination that the dwelling is a homestead, whether or not an abstract or certified copy of a judgment was recorded to create a judgment lien before the dwelling was acquired"]; see also *SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 907-908.)

It is undisputed that defendants have resided in their home since 1997, and that defendants recorded a homestead declaration in July 2003. Thus, before the trial court may order the sale of defendants' homestead, the court must follow the dictates of Code of Civil Procedure sections 704.780 and 704.800 and all other statutes which control the forced sale of a homestead. For example, the court may not order a sale of the homestead if no bid is received that exceeds the amount of the homestead exemption plus the amount required to satisfy all liens and encumbrances. There are limitations on the court's ability to order a sale if no bid is received that is 90 percent or more of the fair market value of the dwelling. Since the trial court did not protect defendants' homestead exemption and otherwise did not comply with the restrictions on the forced sale of a homestead, the order for sale is reversed.

8

## 2. Priority of Plaintiff's Lien

The trial court also determined that plaintiff's lien was effective as of October 2002, and that the lien was not eliminated by the bankruptcy court. Defendants contend the property was sold to them "free and clear" of plaintiff's 2002 lien, and therefore, the 2002 lien was eliminated. (Defendants do not deny that a lien was created after defendants were denied discharge in bankruptcy, when an amended abstract of judgment was recorded by plaintiff in October 2011.) The question of the effect of the bankruptcy court's order, and the priority of plaintiff's lien, is reviewed de novo. (See *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2004) 116 Cal.App.4th 1253, 1267; *Bolton v. Terra Bella Irr. Dist.* (1930) 106 Cal.App. 313, 319.)

The trustee's "Motion to Sell Estate's Equity Interest in Real Property" was made pursuant to title 11 United States Code section 363(b)(1) and Federal Rules of Bankruptcy Procedure, rule 6004. The bankruptcy order approving the sale recited that: "The Trustee is authorized to sell the Estate's interest in the Property to the Debtors for $210,600.00, cash; [¶] . . . [¶] . . . A lender is authorized to record a deed of trust against the Property for the purpose of securing a loan to the Debtors for the Debtors' purchase of the Estate's equity interest; and [¶] . . . The sale shall be free and clear of any and all liens and other interests of [plaintiff], and such liens and interests, if any, shall attach to the sale proceeds with the same validity and priority as they may have had against the Property, pending further order of this Court."

We find the bankruptcy court ordered only a sale of equity in the dwelling, and the equity was sold free of liens and encumbrances so that the entire amount generated from the sale could be turned over to the trustee to distribute among the creditors. The bankruptcy court's later judgment denying discharge permitted plaintiff to continue to pursue defendants' nonexempt assets in full satisfaction of plaintiff's judgment.

Bankruptcy Code section 363(b)(1) allows a trustee, "after notice and a hearing, [to] sell . . . property of the estate." (*Ibid*.) Moreover, section 363(f) permits the estate's property to be sold free and clear of any liens if one of five conditions is satisfied. (*C.H.E.G., Inc. v. Millennium Bank* (2002) 99 Cal.App.4th 505, 511; see also § 363(f).)

9

Property may be sold free and clear of an entity's interests only if applicable nonbankruptcy law permits sale of the property free and clear of such interests; the entity consents; the property is to be sold for greater than the aggregate value of all liens on the property; the interest is in bona fide dispute; or the entity could be compelled to accept a money satisfaction of such interest. (§ 363(f).) A trustee seeking to sell property free and clear of any liens under section 363(f) must do so by noticed motion to the lienholder. (Fed. Rules Bankr.Proc., rules 6004, 9014 (11 U.S.C.).)

The trustee's motion did not seek to sell the estate's interest in the property "free and clear of any liens" under Bankruptcy Code section 363 (f). Because section 363(f) and the bankruptcy rules require notice and an opportunity to be heard on the issue of the elimination of any liens, and section 363(f) requires satisfaction of a condition precedent for the sale to be free and clear of liens (that one of the five conditions of section 363(f) is satisfied), plainly the sale order was never contemplated to eliminate plaintiff's lien on the property.

The order for the sale to be "free and clear of any and all liens and other interests of [plaintiff]" was meant to effectuate the sale of equity in the property, in other words, the value of the property in excess of all liens, encumbrances and exemptions. As is evident from the trustee's accounting, numerous creditor's claims were made in the bankruptcy, and these were to be paid, in order of priority, from the proceeds of the sale of the estate's portion of the equity.

The order of the bankruptcy court denying defendants discharge allowed plaintiff to pursue collection of its debt, because denial of discharge preserves the debtor's liability to creditors, and does not stop the administration of the case. (See 11 U.S.C. § 727.) Because defendants' debts were not discharged, and a judgment lien relates back to (and merges with) the filing of a writ of attachment, plaintiff's lien became effective in October 2002, when its writ of attachment was recorded. (See Code Civ. Proc., § 697.020; *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 302-303; see also *Brun v. Evans* (1925) 197 Cal. 439, 442-443.)

## DISPOSITION

The order is reversed and the matter is remanded for further proceedings consistent with this opinion. Appellants are to recover their costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.